**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| **MAHALA A. CHURCH, individually** ) | |
| **and on behalf of all similarly situated** ) | |
| **individuals,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **CIVIL ACTION 14-0057-WS-B** |
| ) | |
| **ACCRETIVE HEALTH, INC., aka, dba,** ) | |
| **MEDICAL FINANCIAL SOLUTIONS,** ) | |
| ) | |
| **Defendant.** ) | |

**ORDER**

This matter comes before the Court on defendant's Motion to Dismiss and, in the

Alternative, for Summary Judgment (doc. 43). The Motion has been extensively briefed and is

now ripe for disposition.[1]

**I.      Background.**

Plaintiff, Mahala A. Church, purporting to act individually and on behalf of all similarly

situated individuals, brought this action alleging unlawful collection activities by defendant,

Accretive Health, Inc., in violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692

("FDCPA"), and a discharge injunction entered by the Bankruptcy Court.

According to the well-pleaded factual allegations of the Amended Complaint (doc. 41),

Church received a bill from non-party Providence Hospital, sometime after January 1, 2013, in

the amount of $1,944.80, for medical expenses related to a surgical procedure performed on

December 18, 2012. Upon receipt of the bill, Church contacted Providence and disputed the

---

[1]      Defendant has requested that the Motion be set for oral argument. The Local
Rules provide that "the court may in its discretion rule on any motion without oral argument."
LR 7.3. After careful review of the parties' comprehensive written submissions, the undersigned
is of the opinion that oral argument would not be helpful in resolving the legal issues raised by
the Motion. Accordingly, defendant's request for oral argument is **denied**.

charges because she contended that her insurance should have covered the full cost of the procedure. (Doc. 41, ¶ 14.) The Amended Complaint does not specify when, exactly, Providence sent bills or letters to Church, but instead states generally that Providence sent the original bill to her "[s]ometime after" January 1, 2013, and that Providence had "mailed at least one billing statement" to her "[p]rior to January 2014." (*Id.*, ¶¶ 14, 19.)

The Amended Complaint further alleges that Church filed a voluntary Chapter 7 bankruptcy petition on June 7, 2013, and that she listed the disputed Providence debt from December 2012 on the appropriate bankruptcy schedules. (*Id.*, ¶¶ 15-16.) Church received a discharge of her debts from the Bankruptcy Court on September 9, 2013. (*Id.*, ¶ 18.) As a listed creditor, Providence was mailed notice of both Church's original bankruptcy filing and her subsequent discharge. (*Id.*, ¶¶ 17-18.)

The well-pleaded allegations of plaintiff's pleading are that "Providence transferred the account to Medical Financial Solutions for collections … on January 10, 2014 … for collection purposes, including sending letters as a third-party demanding payment." (*Id.*, ¶ 19.) The Amended Complaint characterizes Medical Financial Solutions as "Accretive's collection arm." (*Id.*, ¶ 8.) The Amended Complaint further alleges that Church's "account was in default when it was referred to Medical Financial Solutions" and "was over 12-months past due" at that time. (*Id.*, ¶ 20.) On January 17, 2014, defendant Accretive (doing business as Medical Financial Solutions) sent the letter to Church which lies at the heart of this litigation (the "January 17 Letter"). (*Id.*, ¶ 22 & Exh. A.)[2] In part, the January 17 Letter notified Church that she had "an active balance of $1,944.80 with Providence Hospital" and that "[t]o assist you in resolving this balance, Providence Hospital has sent your account to Medical Financial Solutions. It is very important we hear from you." (*Id.*) The January 17 Letter went on to state that "Medical Financial Solutions is a non-credit reporting, third party agency. Our company works directly

---

[2]    Plaintiff inadvertently omitted the January 17 Letter, which was identified as Exhibit A, when she filed the Amended Complaint on July 28, 2014. (*See* doc. 41.) Upon realizing her mistake, Church requested and received leave of court to file that January 17 Letter as an attachment to the Amended Complaint. (*See* docs. 49, 50.) Per Order entered on September 17, 2014, "[t]he January 17 letter attached to the Motion shall be deemed filed with the Amended Complaint as Exhibit A for all purposes henceforth." (Doc. 50.) In light of these circumstances, this Order will cite the January 17 Letter as Exhibit A to the Amended Complaint, and will consider it in an analysis of the legal sufficiency of plaintiff's pleading.

with Providence Hospital to ensure your account is protected from moving further into collections." (*Id.*)

In Church's view, the January 17 Letter is legally problematic for two reasons. First, although that correspondence was Accretive's "initial contact with plaintiff," it "contained none of the disclosures required by the FDCPA" and Church received no other corrective communications or notices within a five-day period. (*Id.*, ¶ 23.) Second, the Amended Complaint alleges that "[a]t all relevant times Accretive knew or should have known that Plaintiff, who had included the debt at issue in her Chapter 7 case, had received a discharge." (*Id.*, ¶ 24.) These concerns translate directly into the two substantive causes of action Church brings against Accretive. Count One alleges "violations of the FDCPA," and asserts that such violations "include, but are not limited to, failing to comply with the notice requirements of 15 U.S.C. §§ 1692e and 1692g." (*Id.*, ¶¶ 26, 30.) The Amended Complaint expounds on the alleged FDCPA violations as also including misrepresentations of the legal status of a debt by attempting to collect a discharged debt (in violation of 15 U.S.C. § 1692e(2)(A)-(B)) and harassment of Church by attempting to collect a discharged debt (in violation of 15 U.S.C. §§ 1692d and 1692f(1)). (*Id.*, ¶ 31.) Meanwhile, Count Two alleges simply that Accretive's efforts to collect the debt from Church "constitute willful violations of the discharge injunction in violation of 11 U.S.C. § 524." (*Id.*, ¶ 34.) Defendant now moves for dismissal of both counts on multiple stated grounds.

## II.     Analysis of Rule 12(b)(6) Motion.

### A.     *Legal Standard.*

Defendant's Motion to Dismiss is rooted in the premise that the Amended Complaint fails to state claims upon which relief can be granted, and therefore is properly analyzed under Rule 12(b)(6), Fed.R.Civ.P. To withstand Rule 12(b)(6) scrutiny and satisfy Rule 8(a), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," so as to "nudge[ ][its] claims across the line from conceivable to plausible." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citation omitted). "This necessarily requires that a plaintiff include factual allegations for each essential element of his or her claim."

*GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d 1244, 1254 (11th Cir. 2012). Thus, minimum pleading standards "require [ ] more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. As the Eleventh Circuit has explained, *Twombly / Iqbal* principles require that a complaint's allegations be "enough to raise a right to relief above the speculative level." *Speaker v. U.S. Dep't of Health and Human Services Centers for Disease Control and Prevention*, 623 F.3d 1371, 1380 (11th Cir. 2010) (citations omitted). "To survive a 12(b)(6) motion to dismiss, the complaint does not need detailed factual allegations, ... but must give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Randall v. Scott*, 610 F.3d 701, 705 (11th Cir. 2010) (citations and internal quotation marks omitted).

For purposes of its Rule 12(b)(6) analysis, the Court accepts as true all well-pleaded factual allegations of the Complaint, and draws all reasonable inferences in the plaintiff's favor. *See, e.g., Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010) (in reviewing Rule 12(b)(6) motion, court must "accept[] the facts alleged in the complaint as true," "draw[] all reasonable inferences in the plaintiff's favor," and "limit[] our review to the four corners of the complaint"). Notwithstanding this deference given to plaintiff's pleading at the Rule 12(b)(6) stage, it is also true that "[l]egal conclusions without adequate factual support are entitled to no assumption of truth." *Mamani v. Berzain*, 654 F.3d 1148, 1153 (11th Cir. 2011).

## B. Movant's Contention that Defendant is Not a FDCPA "Debt Collector."

The parties agree that the FDCPA claims asserted in Count One of the Amended Complaint are viable only if Accretive is properly deemed a "debt collector" within the meaning of the statute.[3] Indeed, the Congressional findings and declaration of purpose accompanying the FDCPA specify that the statute's purpose is "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). Thus, a threshold requirement for liability in Count One

---

[3]  *See, e.g., Birster v. American Home Mortg. Servicing, Inc.*, 481 Fed.Appx. 579, 582 (11th Cir. July 18, 2012) ("whether an individual or entity is a 'debt collector' is determinative of liability under the FDCPA"); *Madura v. Lakebridge Condominium Ass'n Inc.*, 382 Fed.Appx. 862, 864 (11th Cir. June 14, 2010) (explaining that defendant "was not subject to the FDCPA because it was no debt collector"); *Davidson v. Capital One Bank (USA), N.A.*, --- F. Supp.2d ----, 2014 WL 4071891, *5 (N.D. Ga. Aug. 18, 2014) ("the FDCPA applies only to debt collectors whose conduct involves the collection of a debt") (citation and internal marks omitted).

is that Church must show that Accretive is a "debt collector" within the meaning of the FDCPA. Defendant maintains that Count One fails to state a claim upon which relief can be granted because the Amended Complaint does not plead sufficient facts to support a plausible inference that Accretive qualifies as a "debt collector" for FDCPA purposes.

The appropriate analytical starting place is the statutory language itself. "A 'debt collector' is a term of art in the FDCPA." *Ausar-El ex rel. Small, Jr. v. BAC (Bank of America) Home Loans Servicing LP*, 448 Fed.Appx. 1, 2 (11th Cir. Sept. 21, 2011). The FDCPA defines "debt collector" as meaning "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect … debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). Importantly, this definition expressly excludes from the scope of a debt collector "any person collecting or attempting to collect any debt owed or asserted to be owed or due another to the extent such activity … ***concerns a debt which was not in default at the time it was obtained by such person***." 15 U.S.C. § 1692a(6)(F)(iii) (emphasis added). Thus, a defendant is not a "debt collector" for FDCPA purposes if the debt it was collecting was not in default when the defendant obtained such debt.[4]

The cornerstone of Accretive's Rule 12(b)(6) Motion as to Count One is that the Amended Complaint fails to plead facts supporting a conclusion that Church's debt to Providence Hospital was in default when Accretive took over her account. The term "default" is not defined in the FDCPA;[5] however, case law sheds light on its meaning in this context. In a case cited by both sides, the Second Circuit observed that "[i]n applying the FDCPA, courts have

---

[4]     *See, e.g., Fenello v. Bank of America, NA*, 577 Fed.Appx. 899, 902 (11th Cir. Aug. 12, 2014) ("In this case, the district court correctly concluded that Bank of America was not a 'debt collector' for purposes of § 1692g(b) because its debt collection activities involved a debt that was not in default at the time Bank of America became the servicer."); *Ware v. Bank of America Corp.*, 9 F. Supp.3d 1329, 1337 (N.D. Ga. 2014) (under the FDCPA, "a consumer's creditors or an assignee of a debt are not considered 'debt collectors' so long as the debt was not in default at the time it was assigned") (citations omitted).

[5]     "Unfortunately, the FDCPA does not define so key a term as 'default.' … [W]here there is no relevant contractual provision … between the debtor and the creditor nor any governing regulation, courts have struggled to establish when a debt is in default for purposes of … determining whether a party is a debt collector under the FDCPA." *Simmons v. Med-I-Claims*, 2007 WL 486879, *7 (C.D. Ill. Feb. 9, 2007).

repeatedly distinguished between a debt that is in default and a debt that is merely outstanding, emphasizing that only after some period of time does an outstanding debt go into default." *Alibrandi v. Financial Outsourcing Services, Inc.*, 333 F.3d 82, 87 (2nd Cir. 2003) (citations and footnote omitted). The *Alibrandi* panel opined that "the interests of debtors, creditors, collectors, and debt service providers will best be served by affording creditors and debtors considerable leeway contractually to define their own periods of default, according to their respective circumstances and business interests." *Id.* at 87 n.5. In the absence of a clarifying amendment by Congress (which has not been forthcoming), "the determination of whether a debt is in default is to be made by a court on a case-by-case basis, and … applicable contractual or regulatory language defining the point of default may be instructive." *Kapsis v. American Home Mortg. Servicing Inc.*, 923 F. Supp.2d 430, 440 (E.D.N.Y. 2013) (citations omitted). In conducting such a case-by-case analysis, courts have required (as a necessary but not a sufficient condition) that a pleading allege the debt to have been in default when the defendant acquired it, in order to state a viable claim under the FDCPA.[6]

In accordance with these authorities, the Court must perform a case-specific examination of whether Church's debt is properly characterized as being in default, so as to render Accretive a "debt collector" for FDCPA purposes. In the Amended Complaint, Church expressly alleges that "[t]he account was in default when it was referred to" Accretive. (Doc. 41, ¶ 20.) Of course, *Twombly / Iqbal* pleading principles do not allow a plaintiff to rest his pleading on mere conclusory labels; rather, the Amended Complaint must contain sufficient factual allegations to set forth a plausible claim that the account actually was in default at that time, so that Accretive

---

[6]     *See, e.g., Roth v. CitiMortgage Inc.*, 756 F.3d 178, 183 (2nd Cir. 2014) (affirming dismissal of FDCPA claims where "the amended complaint does not allege that CitiMortgage acquired Roth's debt after it was in default and so fails to plausibly allege that CitiMortgage qualifies as a debt collector under FDCPA"); *Brumberger v. Sallie Mae Servicing Corp.*, 84 Fed.Appx. 458, 459 (5th Cir. Jan. 7, 2004) ("By its plain terms the FDCPA does not apply to Sallie Mae because Brumberger does not allege that he was in default at the time Sallie Mae began servicing his loans. Thus, Brumberger fails to show in his complaint that he is entitled to relief under the FDCPA …."); *McAndrew v. Deutsche Bank Nat'l Trust Co.*, 977 F. Supp.2d 440, 448 (M.D. Pa. 2013) (dismissing FDCPA claim where "Plaintiff's complaint fails to allege that plaintiff's loan was in default when AHMSI began servicing the loan"); *Parker v. BAC Home Loans Servicing LP*, 831 F. Supp.2d 88, 94 (D.D.C. 2011) (dismissing plaintiff's FDCPA claim for failure to plead sufficient facts to show that defendant is a debt collector under the statute, where complaint lacked assertion that plaintiff's loan was in default).

qualifies as a debt collector for purposes of the challenged activities. To carry this burden, Church offers the following factual allegations: (i) the subject medical expenses were incurred on December 18, 2012; (ii) Church's contract with Providence Hospital and billing documents furnished to Church by Providence Hospital provided that "all outstanding charges owed by the patient are due upon discharge" (doc. 41, ¶ 14); (iii) Providence sent at least one billing statement to Church on an unspecified date after January 1, 2013 and before January 1, 2014, demanding payment of $1,944.80; (iv) Church contacted Providence and disputed that she owed the subject funds; (v) when Providence's "collection efforts were unsuccessful, Providence transferred the account to" Accretive (*id.*, ¶ 19); (vi) the transfer of Church's account to Accretive occurred on January 10, 2014, "over a year after the account became originally due and payable" (*id.*); (vii) Church's "debt was over 12-months past due" when it was referred to Accretive, and met Providence's internal definition of "bad debts" at that time (*id.*, ¶ 20); and (viii) the January 17 Letter indicated that "Providence Hospital has sent your account to" Accretive, explained that "[i]t is very important we hear from you," characterized Accretive as a "non-credit reporting, third-party agency" that "works directly with Providence Hospital to ensure your account is protected from moving further into collections." (Doc. 41, Exh. A.)

On their face, these factual allegations (which are accepted as true on Rule 12(b)(6) review) suffice to satisfy Church's modest pleading burden under Rule 8 of the Federal Rules of Civil Procedure. Through these facts, the Amended Complaint specifically pleads that, as a matter of contract and hospital policy, the outstanding charges became due and owing by Church upon discharge (*i.e.*, in December 2012), and that Providence Hospital did not transfer the account to Accretive until January 2014, after its collection efforts were unsuccessful and with the account being more than 12 months past due. These facts and circumstances provide a plausible factual predicate to support Church's allegation that the account was in default at the time of the transfer, so as to render Accretive a debt collector for FDCPA purposes.

In so concluding, the Court finds Accretive's counterarguments unpersuasive in the Rule 12(b)(6) analysis. As an initial matter, Accretive balks that the Amended Complaint omits any allegations as to when Providence Hospital first billed Church, or how often it billed her. (Doc. 44, at 7.) To be sure, it would have been helpful for Church affirmatively to plead that information in her Amended Complaint; however, the law does not obligate her to include every relevant fact bearing on the issue of default in her pleading. Even in the aftermath of *Twombly*,

notice pleading remains the touchstone of federal civil practice under Rule 8, and a plaintiff remains the master of her complaint. In short, "[f]or better or worse, the Federal Rules of Civil Procedure do not permit district courts to impose upon plaintiffs the burden to plead with the greatest specificity they can." *Brown v. Endo Pharmaceuticals, Inc.*, --- F. Supp.2d ----, 2014 WL 3864626, *5 (S.D. Ala. Aug. 5, 2014) (citing *La Grasta v. First Union Securities, Inc.*, 358 F.3d 840, 845-46 (11th Cir. 2004)).

Next, Accretive quarrels with the veracity of Church's factual allegation that "her bill was 'due upon discharge,'" deeming it "implausible" that such would be the case given the inevitable delays attendant to insurance billings. (Doc. 44, at 7.) However, the law does not allow a movant (or a court, for that matter) to pick and choose which well-pleaded facts in a complaint to credit for purposes of a Rule 12(b)(6) analysis. *See, e.g., American United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1057 (11th Cir. 2007) ("when ruling on a motion to dismiss, a court must view the complaint in the light most favorable to the plaintiff and accept all of the plaintiff's well-pleaded facts as true"). Defendant may well disagree that Church's account was due and owing at the moment of her discharge; however, the Amended Complaint pleads otherwise, via specific factual allegations pertaining to the creditor's contracts and policies. Those well-pleaded facts must be credited at the Rule 12(b)(6) stage, no matter how "implausible" the defendant thinks they might be.[7]

Similarly unavailing is Accretive's contention that Church's FDCPA claims rest on the misguided theory that "default occurs immediately after payment becomes due." (Doc. 44, at 7-

---

[7]     In arguing otherwise, Accretive cites the Supreme Court opinion in *Ashcroft v. Iqbal* and appeals to this Court's "judicial experience and common sense." (Doc. 51, at 3.) To be sure, the *Iqbal* Court opined that "[d]etermining whether a complaint states a plausible claim for relief will … be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." 556 U.S. at 679. But that language does not give the district court license to reject well-pleaded factual allegations in a complaint just because the Court might be skeptical of their accuracy. *See id.* ("When there are well-pleaded factual allegations, a court should assume their veracity …."). Here, Church has presented well-pleaded, non-conclusory factual allegations in her Amended Complaint that, pursuant to her contract with Providence Hospital and Providence Hospital's own policies, her account was due in full at the time of her discharge. Defendant cannot effectively strike down those well-pleaded factual allegations by arguing "[t]hat is not how bills work" and urging the Court to jettison such factual allegations by reference to judicial experience and common sense. (Doc. 51, at 3.) That is not how Rule 12(b)(6) works.

8.)  Of course, Accretive is correct that case law rejects the proposition "that default occurs *immediately* after a debt becomes due."  *Alibrandi*, 333 F.3d at 87.  But a fair reading of the Amended Complaint is that Church is not alleging such an immediate default scenario here. Rather, the plain allegations of the Amended Complaint are that (as a matter of Providence Hospital contract and policy) Church's account became due at the time of her discharge in December 2012, that Providence engaged in unsuccessful collection efforts during 2013, and that the account was in default prior to its transfer to Accretive in January 2014.  Thus, plaintiff is not alleging that her account went into default immediately when it became due, but instead that default occurred sometime during the interim 13-month period between the date of her discharge (when payment became due under Providence contracts and policies) and the date of the account's transfer to Accretive.  Defendant's arguments to the contrary in its principal brief construct and then topple over a straw man that bears little resemblance to the actual allegations of the pleading.[8]

Finally, Accretive insists that Count One fails to state a claim because the January 17 Letter "affirmatively demonstrates that the debt in question was not in default."  (Doc. 44, at 8.) In so arguing, Accretive places great weight on certain language in the letter, including passages that refer to Church's "active balance … with Providence Hospital," and that characterize Accretive as "a non-credit reporting" agency that "works directly with Providence Hospital." (*Id.*)  The trouble with this line of reasoning in the Rule 12(b)(6) context is twofold.  First, the referenced text is ambiguous and does not appear inconsistent with the concept of default. Whether Church's balance at Providence Hospital was "active" or not, and whether Accretive is a "non-credit reporting" agency, does not rule out the reasonable possibility that the account was in default as a matter of Providence contract and/or policy when it was transferred to Accretive. Other language in the letter warning that Church's account may move "further into collections" suggests that default had already occurred.  On Rule 12(b)(6) review, reasonable inferences are drawn in favor of the nonmovant.  Assuming that the January 17 Letter taken as a whole might support an inference that Church's debt was not in default, that letter (considered in conjunction

---

[8]      As plaintiff accurately observes, "Church's claim does not hinge on whether the account was in 'default' the moment it became past due (upon discharge from the hospital)." (Doc. 48, at 10.)

with the pleading's other factual allegations) also supports a reasonable inference that it was. Those inferences are resolved in Church's favor at the motion to dismiss stage.

Second, even if some talismanic significance might attach to the phrase "active balance" in the January 17 Letter, the law is clear that a third-party agency like Accretive has no power unilaterally to recharacterize a debt's status into something it is not in order to remove it from the ambit of the FDCPA. *See, e.g., Justice v. Ocwen Loan Servicing, LLC*, 2014 WL 526143, *5 (S.D. Ohio Feb. 7, 2014) (finding that dismissal of FDCPA claim was inappropriate where defendants pointed to neither company policy nor a contract between the parties that defines "default," and resisting efforts by defendants to "define default according to their own terms"); *Simmons v. Med-I-Claims*, 2007 WL 486879, *8 (C.D. Ill. Feb. 9, 2007) ("Any agreement between the creditor and the defendant that it would only service debts that were not in default could not change the status of the account, and it was irrelevant if the defendant sincerely believed that it was servicing a debt that was not in default.") (citing *Alibrandi*, 333 F.3d at 88); *see generally Fenello v. Bank of America, NA*, 577 Fed.Appx. 899, 902 (11th Cir. Aug. 12, 2014) (noting in context of FDCPA "debt collector" dispute the "fundamentally flawed assumption that a litigant can amend the definition of a statutorily-defined term," inasmuch as "[d]efinitions belong to the definers, not the defined"). Simply put, if Church's debt to Providence Hospital was in default at the time of the January 17 Letter, then no amount of relabeling or rebranding by Accretive in that correspondence (even if done in good faith pursuant to Accretive's sincerely held beliefs or understandings) could or would alter that status for FDCPA purposes.[9]

---

[9] Accretive's argument to the contrary misreads (or at least overstates) the case authorities on which it relies. In particular, defendant asserts that "[c]ourts have repeatedly found that a debt was not in default where the purported debt collector explicitly represents itself as acting on behalf of a creditor to service an account that is still active on the creditor's books." (Doc. 51, at 6-7.) For example, to support this proposition, Accretive cites *Roberts v. NRA Group, LLC*, 2012 WL 3288076 (M.D. Pa. Aug. 10, 2012). In *Roberts*, however, the court did not rely on anything the defendant told the plaintiff as proving or disproving default, but instead determined that "whether Plaintiff's account was in default will be determined by looking at the 'state of mind' of the creditor to see whether the creditor considered the debt to be in default." *Id.* at *6. It is Providence Hospital's understanding as to the status of Church's account that matters; therefore, a letter from Accretive stating that it understands and believes Church's account to have an "active balance" with Providence appears to be of little moment in the "default" inquiry.

In sum, after applying the Rule 12(b)(6) legal standard, the Court cannot find as a matter of law that Accretive fails to qualify as a "debt collector" under the FDCPA with respect to Church's account at Providence Hospital; therefore, dismissal of Count One on that basis is unwarranted.

### C.    *Movant's Contention that Count One Flunks* **Twombly** *Because It Lacks Necessary Detail for Alleged FDCPA Violations.*

As an alternative basis for seeking dismissal of Count One, Accretive contends that the Amended Complaint does not satisfy plaintiff's *Iqbal / Twombly* pleading burden with respect to the particular FDCPA violations alleged. Defendant's position is that the Amended Complaint "cites several provisions of the FDCPA but does not provide any facts demonstrating just how those provisions were allegedly violated." (Doc. 44, at 16.) On that basis, Accretive asks that Count One be dismissed for (i) lack of factual allegations stating a plausible claim for violation of 15 U.S.C. §§ 1692d and 1692f(1), and (ii) lack of factual allegations stating a plausible claim for violation of 15 U.S.C. §§ 1692e and 1692g. (*Id.* at 16-18.) The Court considers each of these arguments in turn.[10]

Section 1692d forbids a debt collector from engaging "in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. Accretive states that Church has failed to plead a plausible §

---

[10]    In its reply, Accretive points to Church's failure to address its *Twombly* argument relating to the §§ 1692d and 1692f(1) claims, and maintains that because of that omission, "those claims are waived." (Doc. 51, at 11.) This is incorrect. *See Gailes v. Marengo County Sheriff's Dep't*, 916 F. Supp.2d 1238, 1243-44 (S.D. Ala. 2013) ("the Court will not treat a claim as abandoned merely because the plaintiff has not defended it in opposition to a motion to dismiss. Instead, the Court will review the merits of the defendant's position and, if it is clearly incorrect or inadequate to satisfy the defendant's initial burden, will deny the motion despite the plaintiff's failure to respond.") (footnote omitted); *see also Stubbs v. City of Center Point, Ala.*, 988 F. Supp.2d 1270, 1276 (N.D. Ala. 2013) ("Defendants argue that by failing to respond to Defendants' arguments in its motion to dismiss regarding Count III, Plaintiffs have waived their objection on this matter. This is not the case."); *Cole v. City of Tarrant*, 2014 WL 6453910, *5 (N.D. Ala. Nov. 17, 2014) ("Plaintiffs' failure to file any opposition does not automatically mean that all three motions [to dismiss] are due to be granted."); *Branch Banking and Trust Co. v. Howard*, 2013 WL 172903, *1 (S.D. Ala. Jan. 16, 2013) (plaintiff's "lack of response to the Rule 12(b)(6) Motion does not trigger the kneejerk granting of such Motion on an abandonment theory"). In the face of these carefully reasoned authorities, the Court declines to equate plaintiff's failure to respond with waiver or abandonment of those claims based on an off-hand remark in an unpublished Eleventh Circuit opinion, as Accretive would have it do.

1692d claim because the mere mailing of a single letter requesting payment cannot rise to the level of a § 1692d violation. The critical factor omitted by Accretive is that the Amended Complaint alleges that § 1692d was violated when defendant "harass[ed] the Plaintiff by attempting to collect a discharged debt in violation of the discharge order." (Doc. 41, ¶ 31(c).) So this is not a run-of-the-mill case in which a debt collector simply mailed a letter to a plaintiff requesting payment. As postured in the Amended Complaint, this is a case in which a debt collector mailed a letter to a plaintiff requesting payment <u>after</u> being on notice that the plaintiff's debt had been discharged in bankruptcy. Defendant's cited authorities do not clearly establish that no actionable § 1692d harassment exists in such circumstances.[11] On this minimal showing by movant, the Court cannot say as a matter of law that Church's § 1692d claim is legally insufficient.

As for the plaintiff's § 1692f claim, Accretive maintains in summary fashion that it should be dismissed because the Amended Complaint fails either to identify improper acts enumerated in that section or to allege misconduct beyond that which violates other FDCPA provisions. However, a plain reading of § 1692f reveals that a debt collector violates this section by "collection of any amount … unless such amount is expressly authorized by the agreement creating the debt or ***permitted by law***." 15 U.S.C. § 1692f(1) (emphasis added). A reasonable reading of the Amended Complaint is that it alleges that Accretive violated § 1692f(1) because the debt in question had been discharged in bankruptcy, such that its collection was not "permitted by law." (*See* doc. 41, ¶ 31(c).) Defendant has made no argument or showing that a § 1692f(1) claim would not be cognizable under these circumstances, and the Court will not unilaterally expand Accretive's argument beyond that presented in its briefs.

Accretive also argues in conclusory fashion that the Amended Complaint fails to state claims under §§ 1692e and 1692g because it lacks "factual allegations for each essential element." (Doc. 44, at 18.) This contention is difficult to fathom. Section 1692e establishes that

---

[11] To be sure, Accretive relies on a Seventh Circuit case in which the panel observed that plaintiffs stated "no serious claim" under § 1692f where "all three debt collectors desisted immediately on learning about the bankruptcy proceedings." *Randolph v. IMBS, Inc.*, 368 F.3d 726, 733 (7th Cir. 2004). The distinction here, however, is that Church's Amended Complaint alleges that Accretive knew (or at least should have known) about the bankruptcy discharge before it sent the January 17 Letter to her; therefore, the quoted portion of *Randolph* does not appear to bolster movant's argument.

it is a FDCPA violation when, among other things, a debt collector "fail[s] to disclose in the initial written communication with the consumer … that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose." 15 U.S.C. § 1692e(11). And § 1692g requires a debt collector, within five days after the initial communication, to send the consumer a written notice containing certain disclosures, including, for example, "a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector." 15 U.S.C. § 1692g(a)(3). On its face, the Amended Complaint alleges that the January 17 Letter was Accretive's initial contact with Church, that it contained none of those disclosures (a copy of said letter appended to the Amended Complaint as an exhibit appears to confirm that allegation), and that Accretive furnished no other written notice or other communication to Church within five days thereafter that complied with those disclosure requirements. What "essential element" does Accretive contend is missing from these well-pleaded factual allegations? Defendant does not say. Clearly, dismissal is unwarranted as to Church's claims for "[f]ailing to make the disclosures required by 15 U.S.C. §§ 1692e and 1692g." (Doc. 41, ¶ 31(a).)

Finally, Accretive labels "entirely insufficient" (doc. 44, at 18) Church's FDCPA claims that defendant "[m]isrepresented the legal status of a debt by attempting to collect a discharged debt in violation of 15 U.S.C. § 1692e(2)(A) and (B)." (Doc. 41, ¶ 31(b).) In its reply, Accretive elaborates by explaining that the claim is deficient without allegations "that Accretive Health made any statement about Plaintiff's bankruptcy." (Doc. 51, at 11.) Apparently, Accretive argues that it could not have violated § 1692e because it did not comment on Church's bankruptcy when it pursued collection of the discharged debt from her. But this argument misses the point. As presented in the Amended Complaint, Plaintiff's claim is that the attempt to collect a discharged debt (*i.e.*, the January 17 Letter) is itself a misrepresentation of the debt's legal status and therefore a violation of § 1692e. Substantial persuasive authority lends support to that position. *See, e.g., Ross v. RJM Acquisitions Funding LLC*, 480 F.3d 493, 495 (7th Cir. 2007) ("Dunning people for their discharged debts would undermine the 'fresh start' rationale of bankruptcy … and is prohibited by the Fair Debt Collection Practices Act, which so far as relates to this case prohibits a debt collector … from making a 'false representation of the character,

amount, or legal status of any debt.' 15 U.S.C. § 1692e(2)(A).").[12]  The Court therefore cannot

find as a matter of law that the allegations of the Amended Complaint are inadequate to state a

violation of § 1692e(2)(A) for misrepresentation of the legal status of Church's debt to

Providence Hospital.[13]

     **D.**     ***Movant's Contention that No Private Cause of Action Exists for Violation of Bankruptcy Discharge Injunction.***

Next, Accretive moves for dismissal of Count Two of the Amended Complaint for failure

to state a claim.  Church's pleading frames Count Two as a claim for "violation of the discharge

injunction" and alleges that "Defendant's conduct with Plaintiff and its continued attempts to

collect the debt constitute willful violations of the discharge injunction in violation of 11 U.S.C.

---

[12]     *See also Eide v. Colltech, Inc.*, 987 F. Supp.2d 951, 962-63 (D. Minn. 2013) ("Sending a collection letter indicating that a certain debt is due and payable when the debt has actually been discharged in bankruptcy constitutes a false representation about the legal status of the debt, and is a violation of the FDCPA under the plain language of the statute."); *Yarney v. Ocwen Loan Servicing, LLC*, 929 F. Supp.2d 569, 576 (W.D. Va. 2013) ("One type of misrepresentation prohibited by § 1692e(2)(A) is the false representation that a debt exists."); *Rios v. Bakalar & Associates, P.A.*, 795 F. Supp.2d 1368, 1369 (S.D. Fla. 2011) (opining that consumer may bring § 1692e claim against debt collector on ground that "a debt collector makes a false or misleading representation by attempting to collect on debt discharged in bankruptcy"); *Smith v. Encore Capital Group Inc.*, 966 F. Supp.2d 817, 826 (E.D. Wisc. 2013) (denying motion to dismiss § 1692e(2)(A) claim where plaintiff alleged that defendant had sent letter regarding "non-existent" debt); *Bacelli v. MFP, Inc.*, 729 F. Supp.2d 1328, 1332 (M.D. Fla. 2010) ("A demand for immediate payment while a debtor is in bankruptcy (or after the debt's discharge) is 'false' in the sense that it asserts that money is due, although … it is not.") (citations omitted); *Sterling v. American Credit & Collections, LLC*, 2012 WL 3553757 (D. Colo. Aug. 16, 2012) ("Where a plaintiff alleges that a debt collector seeks to collect a debt that is not owed by the plaintiff, or is unenforceable, the plaintiff has stated a claim under the FDCPA.").

[13]     To drive the point home, Accretive argues in its reply that the Amended Complaint fails to plead "any facts to plausibly suggest that Accretive Health's letter would have misled the 'least-sophisticated consumer' into believing that her debt was not discharged."  (Doc. 51, at 12.)  As the above-identified authorities reason, however, sending a dunning letter to a consumer for a discharged debt would naturally have a tendency to mislead the consumer into believing the debt was not discharged but was still due and owing (else, why would the letter have been sent at all?).  It defies logic, common sense, and abundant case authorities to assert, as defendant does, that sending a collection letter to a consumer for a non-existent, discharged debt could not plausibly be misleading to the consumer as to the legal status of such debt.

§ 524." (Doc. 41, ¶ 34.)[14]  In Count Two, Church seeks a judicial finding that Accretive is in contempt of court for violating § 524, as well as an award of damages, costs and attorney's fees.

Defendant maintains that Count Two should be dismissed as a matter of law because there is no private cause of action for a § 524 violation.  Although the Eleventh Circuit has not weighed in on this issue, a veritable avalanche of persuasive authority buttresses defendant's position.  *See, e.g., In re Joubert*, 411 F.3d 452, 456 (3rd Cir. 2005) (observing that "[t]his Court has not addressed whether § 524 implies a private right of action, … but the weight of circuit authority is that it does not") (citations omitted); *Walls v. Wells Fargo Bank, N.A.*, 276 F.3d 502, 509 (9th Cir. 2002) ("there is no private right of action under § 524"); *Pertuso v. Ford Motor Credit Co.*, 233 F.3d 417, 422-23 (6th Cir. 2000) ("we have no hesitancy in joining those courts (a clear majority) that have held § 524 does not impliedly create a private right of action").[15]

_____

[14]    In relevant part, § 524 provides that a bankruptcy discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor."  11 U.S.C. § 524(a)(2).  Thus, the theory animating Count Two is that, by sending the January 17 Letter seeking collection of the Providence Hospital debt some four months after Church had received a discharge in bankruptcy, Accretive violated § 524, thereby entitling her to "damages, costs, and attorney's fees."

[15]    *See also In re Giles*, 502 B.R. 892, 905 (Bankr. N.D. Ga. 2013) ("This Court agrees with the three courts of appeal that have considered this issue that there is no private cause of action for violating the discharge injunction."); *In re Otero*, 498 B.R. 313, 319 (Bankr. D.N.M. 2013) ("the Court holds that § 524(a)(2) does not confer a private right of action upon debtors in cases of violation of the discharge injunction. … [A] debtor may file a motion to sanction a creditor for violating § 524(a)(2)."); *In re Englert*, 495 B.R. 266, 270-71 (Bankr. W.D. Pa. 2013) ("case law that has developed within the Third Circuit as well as other circuits reflects that no private right of action for a discharge violation exists"); *In re Walker*, 2013 WL 5524999, *1 (Bankr. M.D.N.C. Oct. 3, 2013) ("it is settled that while section 524 of the Bankruptcy Code provides for the discharge injunction, it does not provide for a private right of action by a debtor to recover money damages based upon a violation of the discharge injunction"); *Baxter v. Johnson & Freedman, LLC*, 2012 WL 2921799, *7 (N.D. Ga. May 10, 2012) (identifying as "prevailing view" that "neither Section 524 nor Section 105, the statutory contempt power, confer[s] a private right of action for violation of the discharge injunction"); *Killion v. New York Dep't of Taxation and Finance*, 2012 WL 1086155, *3 (N.D.N.Y. Apr. 2, 2012) ("Discharge violations – which, under 11 U.S.C. § 524, include collection of a discharged debt by a creditor – do not give rise to a private right of action.") (footnote omitted); *Hooks v. Acceptance Loan Co.*, 2011 WL 2746238 (M.D. Ala. July 14, 2011) (reciting and following "strong authority that no private cause of action exists for violations of the discharge injunction").

Under this line of authorities, a plaintiff in Church's position would not be left without a remedy under the Bankruptcy Code where, as here, it is alleged that a debt collector violated the discharge injunction imposed by § 524(a)(2). Rather, Church would remain entitled to pursue contempt sanctions against Accretive via motion filed pursuant to 11 U.S.C. § 105.[16] Unquestionably, the bankruptcy court responsible for the discharge injunction retains the power to enforce it via § 105 contempt powers. *See Alderwoods Group, Inc. v. Garcia*, 682 F.3d 958, 969-70 (11th Cir. 2012) (recognizing that "a bankruptcy court necessarily has power to enforce its own orders regarding its administration of the estate" and that "the court that issued the injunctive order alone possesses the power to enforce compliance with and punish contempt of that order"). On that basis, Accretive reasons, if Church seeks contempt sanctions for violation of the discharge injunction, it may do so by filing a appropriate § 105(a) motion in the bankruptcy court.

Once again, considerable authority favors movant's reasoning. Numerous courts have opined that the proper (and exclusive) method for a debtor like Church to pursue contempt sanctions for a § 524(a)(2) violation is via motion filed in the bankruptcy proceedings. *See, e.g., Barrientos v. Wells Fargo Bank, N.A.*, 633 F.3d 1186, 1191 (9th Cir. 2011) (concluding that "there is no private right of action for violation of a § 524 discharge injunction" and that "an order of contempt under § 105 to enforce an existing injunction must be sought via motion in the bankruptcy action"); *Cox v. Zale Delaware, Inc.*, 239 F.3d 910, 917 (7th Cir. 2001) (opining that where a debtor seeks relief for violation of a bankruptcy discharge injunction, "affirmative relief can be sought only in the bankruptcy court that issued the discharge. In such a case the proper procedure would indeed be to reopen the bankruptcy proceeding, since the debtor would be seeking to enforce the order of discharge issued in that proceeding. A court retains jurisdiction to enforce its injunctions.").[17] More generally, the Eleventh Circuit has stated with crystalline

---

[16] That statute provides, in part, as follows: "The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title," including "*sua sponte*, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules." 11 U.S.C. § 105(a). The Eleventh Circuit has observed that "Section 105 creates a statutory contempt power, distinct from the court's inherent contempt powers in bankruptcy proceedings." *In re Hardy*, 97 F.3d 1384, 1389 (11th Cir. 1996).

[17] *See also In re Moore*, --- B.R. ----, 2014 WL 4851824, *10 (Bankr. E.D. Tenn. Sept. 29, 2014) ("As this court has already found that there is no private right of action pursuant (Continued)

clarity that it is "misguided" for a plaintiff to file a complaint for declaratory relief, rather than a "motion for an order to show cause why Creditors should not be held in contempt for violating the discharge injunction," because the "proper procedure to invoke the court's civil contempt power" is to file a motion. *Alderwoods*, 682 F.3d at 68 & n.20. On the strength of these authorities, Accretive advances a compelling argument that Count Two should be dismissed because (i) Church has no private right of action under § 524, and (ii) if Church wishes to pursue sanctions for Accretive's alleged violation of the bankruptcy discharge injunction, its sole recourse is to file a motion for relief before the bankruptcy court (the court that issued the discharge injunction) pursuant to 11 U.S.C. § 105.

Plaintiff's response to this aspect of the Rule 12(b)(6) Motion is twofold. First, Church indicates that, while § 524 may not provide for a private right of action, § 105(a) allows an individual, separate claim to be brought for contempt. In other words, Church suggests that what she cannot do directly through § 524 (*i.e.*, sue Accretive for civil contempt based on violation of a bankruptcy discharge injunction), she can do indirectly through the catch-all provisions of § 105 which, again, authorize courts in bankruptcy to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). However, the clear weight of the authority condemns such an end-run around the limitations of § 524. *See,*

---

to 11 U.S.C. § 524(a) …, the court concludes generally that a request for sanctions for such a violation must be brought as a motion for contempt in the main bankruptcy case"); *In re Laudani*, 506 B.R. 19, 28 (Bankr. D. Mass. 2014) ("If the Debtor can establish a violation of the discharge injunction, his remedy is a motion for contempt filed in the main case."); *In re Montano*, 488 B.R. 695, 710 (Bankr. D.N.M. 2013) (where defendant violates discharge injunction, "Plaintiffs' remedy is an order finding Defendant in contempt of court for violating the injunction"); *In re Moreno*, 479 B.R. 553, 569 (Bankr. ED. Cal. 2012) ("a violation under § 524(a) is enforced through the bankruptcy court's contempt authority"); *In re Frambes*, 454 B.R. 437, 443 (Bankr. E.D. Ky. 2011) ("[T]he only remedy for a debtor aggrieved by a violation of the discharge injunction is to seek relief by virtue of a motion in the main bankruptcy proceeding."); *In re Beck*, 283 B.R. 163, 174 (Bankr. E.D.Pa. 2002) ("only the court which issues a discharge order that gives rise to a discharge injunction has authority through its contempt powers to enforce the injunction"); *Baxter*, 2012 WL 2921799, at *7 (finding that "the court whose order has been defied must entertain the contempt action," and that the "bankruptcy court that issued the discharge injunction is the proper forum" for a contempt motion predicated on violation of § 524); *Peeples v. Blatt*, 2001 WL 921731, *5 (N.D. Ill. Aug. 15, 2001) ("the sole remedy for a violation of § 524 is a contempt action brought in the bankruptcy court that issued the order of discharge").

*e.g., Walls*, 276 F.3d at 504 (holding "that a private cause of action is not available under § 524, or through § 105"); *Pertuso*, 233 F.3d at 423 (rejecting argument that § 524 violations "may be remedied pursuant to § 105" and reasoning that courts "cannot legislate" to add powers and remedies beyond those fixed by Congress).[18] Courts that have so held have taken pains to explain that "to create a new remedy would put us in the business of legislating" and that "it is not up to us to read other remedies into the carefully articulated set of rights and remedies set out in the Bankruptcy Code." *Walls*, 276 F.3d at 507. Besides, these courts have observed, a debtor claiming to be aggrieved by a § 524 violation already has a remedy in the form of a motion for civil contempt filed in the bankruptcy court (which in turn can award compensatory damages and attorney's fees and can compel the creditor's compliance with the discharge injunction); therefore, "no further remedy is necessary," even if the courts were inclined to enter the business of legislating. *Id.* These decisions persuasively defeat Church's attempt to conjure up a private right of action for § 524 violations from the remedial enforcement powers authorized by § 105.

In arguing otherwise, Church cites case authorities that either represent a distinctly minority viewpoint or that are distinguishable on their face. Most notably, Church leans on *In re Brannan*, 485 B.R. 443 (Bankr. S.D. Ala. 2013), for the proposition that a private cause of action is available under § 105(a). In *Brannan*, however, Bankruptcy Judge Mahoney specifically recognized the *Walls / Pertuso / Joubert* line of authorities. Far from disagreeing with them or

---

[18]     *See also Joubert*, 411 F.3d at 456 (expressing agreement with the reasoning of *Walls* and *Pertuso* insofar as those decisions "rejected the argument that § 105(a) authorizes private causes of action to remedy bankruptcy discharge violations"); *In re Brannan*, 485 B.R. 443, 452 (Bankr. S.D. Ala. 2013) ("many courts have held that § 105 does not create a private cause of action standing alone or in conjunction with other Bankruptcy Code sections."); *In re Dunbar*, 446 B.R. 306, 310 (Bankr. E.D. Ark. 2011) ("Defendant is correct that 11 U.S.C. § 105(a) does not create a private cause of action."); *In re Bonanno*, 2009 WL 8556815, *4-5 (Bankr. W.D. Pa. Mar. 24, 2009) (reasoning that § 105(a) "does not, for instance, create substantive rights which would otherwise be unavailable under the Bankruptcy Code" and concluding that "§ 105(a) does not provide a basis for bringing an action for an alleged violation of § 524(a)(2)"). The critical point here is that § 105(a) confers on a bankruptcy court only a limited equitable power, that being "the power to exercise equity in carrying out the *provisions* of the Bankruptcy Code, rather than to further the purposes of the Code generally, or otherwise to do the right thing." *In re Kalikow*, 602 F.3d 82, 97 (2nd Cir. 2010) (citation and internal quotation marks omitted). Thus, § 105(a) does not confer upon federal courts the authority to create brand new substantive rights and remedies for bankruptcy litigants not delineated elsewhere in the Bankruptcy Code.

suggesting that they were poorly reasoned or wrongly decided, Judge Mahoney declared that "[t]hose cases are not like this one" because *Brannan* involved a systematic fraud-on-the-court scenario that implicated inherent powers of the court, rather than violation of a Bankruptcy Code section. 485 B.R. at 452. That distinction – and the *Brannan* court's seeming agreement with *Walls* / *Pertuso* / *Joubert* in the context in which they were decided – substantially undercuts *Brannan*'s utility for Church.[19]

As a second ground for objecting to Accretive's argument that no private right of action exists either under § 524 or through the intermediary of § 105(a), Church asserts that a request for civil contempt sanctions arising from violation of a discharge injunction entered by the Bankruptcy Court is properly brought before *either* the bankruptcy judge that entered the injunction *or* the corresponding District Court. On that point, plaintiff appears correct that this District Court would have jurisdiction (assuming the reference were withdrawn) to hear a request for sanctions concerning a discharge order entered by the United States Bankruptcy Court for the Southern District of Alabama. *See* 28 U.S.C. § 1334(b) (reciting general rule that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11"); 28 U.S.C. § 157(a) (providing that district courts may refer proceedings "arising in or related to a case under title 11 … to the bankruptcy judges for the district"); 28 U.S.C. § 157(d) (allowing district court to "withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown"). As Accretive hastens to emphasize, however, its Rule 12(b)(6) Motion is not predicated on the notion that Count Two fails for want of jurisdiction, but rather

---

[19] Plaintiff also purports to rely on *Jove Engineering, Inc. v. I.R.S.*, 92 F.3d 1539 (11th Cir. 1996), in which the Eleventh Circuit acknowledged that "§ 105(a) grants an independent statutory source for monetary relief" for automatic stay violations. *Id.* at 1554. This reliance breaks down because the *Jove* panel said nothing about § 105(a) authorizing a private right to bring a separate cause of action in a separate lawsuit; to the contrary, the procedural posture of *Jove* was that the plaintiff had filed a motion (first in the bankruptcy court, then withdrawn to the district court) to hold the defendant in civil contempt for violating the automatic stay. That is to say, the *Jove* plaintiff had done exactly what Accretive contends Church should have done (but failed to do) here. Thus, the *Jove* court did not confront the question of whether a freestanding lawsuit for such a violation would be authorized by § 105(a).

that Count Two fails to state a valid claim because there is no private right of action.  Whether this Court would have jurisdiction to hear such a cause of action if it existed is beside the point.[20]

Even if the question were properly framed as being whether this Court or the Bankruptcy Court should decide the civil contempt issue relating to Accretive's alleged violation of Church's discharge order, a considerable body of authority has concluded that the bankruptcy judge who issued the discharge order is the only appropriate authority to decide whether (and if so what type and magnitude of) civil contempt sanctions are warranted in the § 524 context.[21]  One appellate court has reasoned that "[t]he court that issued the discharge order is in a better position to adjudicate the alleged violation, assess its gravity, and on the basis of that assessment formulate a proper remedy." *Cox*, 239 F.3d at 916.  Another appellate court raised the specter that directing such a contempt issue to the district court "could put enforcement of the discharge injunction in the hands of a court that did not issue it (perhaps even in the hands of a jury), which is inconsistent with the present scheme that leaves enforcement to the bankruptcy judge whose discharge order gave rise to the injunction." *Walls,* 276 at 509.  Besides, "the equities at issue are bankruptcy equities" and district courts should respect "Congress's deliberate decision to

---

[20]    In that regard, plaintiff cites *Maddox v. Auburn University Federal Credit Union*, 441 B.R. 149 (M.D. Ala. 2010), in which the court opined that "[t]his court is not without authority to consider and dispose of an action for contempt of a statutory injunction arising out of a case in the bankruptcy court of this district." *Id.* at 152.  In *Maddox*, however, the court framed the "only dispute" between the parties as being "whether this court or the bankruptcy court should exercise jurisdiction over these contempt claims." *Id.* at 152.  That is not the issue here; to the contrary, Accretive's argument is more fundamental (*i.e.*, the existence *vel non* of a private cause of action for violation of § 524).

[21]    This issue has previously been discussed at pages 16 and 17, and footnote 17, *supra.  See also Barrientos v. Wells Fargo Bank, N.A.*, 633 F.3d 1186, 1191 (9th Cir. 2011) ("an order of contempt under § 105 to enforce an existing injunction must be sought via motion in the bankruptcy action"); *Frambes*, 454 B.R. at 443 (opining that "Congress intended for the enforcement of a discharge order to remain solely in the hands of the bankruptcy judge who issued the order"); *In re Chastain*, 2012 WL 2377467, *5 (Bankr. E.D. Tenn. June 25, 2012) (concluding that a request for sanctions for violation of § 524 discharge injunction "must be brought as a motion for contempt in the main bankruptcy case"); *Killion*, 2012 WL 1086155, at *3 ("the proper method for seeking a sanction premised upon a discharge violation is a motion for contempt in the bankruptcy court that issued the discharge"); *Maddox*, 441 B.R. at 153 (deeming it "preferable" for bankruptcy court that entered the discharge order to resolve contempt issue relating to § 524(a)(2) injunction).

place supervision of discharge in the bankruptcy court." *Id.* For these reasons, even if Accretive's Rule 12(b)(6) Motion hinged on whether this Court or the Bankruptcy Court should decide the § 524 contempt issue raised in Count Two (and it does not, the question here being whether there is a private right of action, not which court should hear such a claim if it actually did exist), the Court concludes that, in the interests of efficiency and bankruptcy equities, any contempt motion that Church might file under §§ 105(a) and 524 should be directed in the first instance to the bankruptcy judge that issued the discharge order, rather than to the undersigned.

Both the Court and the parties have held forth at length about Count Two. Cutting through the language and citations, the principles involved are straightforward. In Count Two, Church seeks to pursue a private cause of action for violation of the bankruptcy discharge injunction. The trouble is that the Bankruptcy Code does not create such a private cause of action under 11 U.S.C. § 524(a)(2); moreover, this Court cannot and will not legislate where Congress did not by engaging in an overly expansive reading of its powers under 11 U.S.C. § 105 to create new substantive rights and remedies for aggrieved debtors. Simply put, Church has brought a cause of action via Count Two that does not exist; therefore, Accretive is correct that Count Two fails to state a claim and that it must be dismissed pursuant to Rule 12(b)(6). None of this is prejudicial to Church. Church has a remedy. If Church wishes to pursue civil contempt sanctions against Accretive, then her clearly defined pathway for doing so is to reopen the bankruptcy proceedings and file a motion for sanctions there under the authority of 11 U.S.C. § 105(a). Given the availability of this widely accepted equitable remedy that Church (for whatever reason) has elected not to pursue, this Court has no qualms about hewing to the overwhelming weight of the case law that refuses to recognize a private right of action (*i.e.*, a new, judicially created remedy, above and beyond the carefully articulated set of rights and remedies fashioned by Congress in the Bankruptcy Code) for § 524(a)(2) violations. For all of the reasons, the Motion to Dismiss is **granted** with respect to Count Two, which will be dismissed for failure to state a claim upon which relief can be granted.

## III.    Analysis of Rule 56 Motion.

In the alternative to its Motion to Dismiss, Accretive moves for summary judgment as to the FDCPA claims set forth in Count One of the Amended Complaint. (*See* doc. 44, at 11-16.) Accretive does so in order to place before the Court certain materials beyond the four corners of

the pleadings themselves.[22]  Based on the Affidavit of Donna Bragg and three pages from a Providence Hospital Policy & Procedure Manual, Accretive contends that the "undisputed facts" establish that Church's debt was not in default at the time it was referred to Accretive.[23]  As discussed at length *supra*, if Church's account at Providence was not in default when it was referred to Accretive, then Accretive is not a "debt collector" for purposes of the FDCPA, and plaintiff's claims in Count One necessarily fail.

In response, plaintiff balks that defendant's Motion for Summary Judgment was filed too early.  Plaintiff invokes Rule 56(d), which provides that "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may … defer considering the motion or deny it."  Rule 56(d)(1), Fed.R.Civ.P.  In an affidavit filed pursuant to Rule 56(d), Church's counsel confirms that "no discovery has been conducted by either party" and offers a detailed description of multiple factual areas in which plaintiff reasonably requires (but has not yet received) discovery to test Accretive's factual submission relating to the "default" status of Church's account at the time of referral to Accretive.  (*See* doc. 35-1, ¶ 2.)[24]  In particular, plaintiff's counsel's affidavit delineates five

---

[22]     "If, on a motion under Rule 12(b)(6) …, matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."  Rule 12(d), Fed.R.Civ.P.; *see also Day v. Taylor*, 400 F.3d 1272, 275-76 (11th Cir. 2005) ("The district court generally must convert a motion to dismiss into a motion for summary judgment if it considers materials outside the complaint.").

[23]     Those documents identify Bragg as Director of the Business Office for Providence Hospital and recite her averments that Providence refers "active open accounts not yet in default" to Accretive, that Providence does not consider an account to be in default until after Accretive attempts collection and recommends reclassification as "bad debt," that different companies (not Accretive) handle Providence collections for defaulted accounts, and that Church's account "was never considered in default" by Providence.  (Doc. 46, ¶¶ 1-11.)  Unless plaintiff is able to muster contrary evidence, the facts set forth in Bragg's Affidavit may erect an insurmountable hurdle for Church as to Count One's "default" and "debt collector" prerequisites to FDCPA liability.  As plaintiff points out, however, the Federal Rules of Civil Procedure and fundamental fairness require that she be given a reasonable opportunity through the discovery mechanism to ferret out such contrary evidence.  That has not happened yet.

[24]     That filing erroneously purports to have been submitted pursuant to Rule 54(d), Fed.R.Civ.P.; however, plaintiff's counsel promptly corrected the error via a Notice of Erratum and Request for Correction (doc. 37) filed the very next day.  In that Notice, plaintiff identified the mistake, clarified that "[t]he Affidavit was submitted pursuant to Rule 56(d)," and requested (Continued)

categories of documents and information that (i) counsel has been unable to access to date because discovery has not commenced, and (ii) counsel reasonably believes may have a bearing on whether Church's account was in default when Providence Hospital transferred it to Accretive.  (*Id.*)[25]  Plaintiff's counsel avers that "[o]nce discovery begins, Plaintiff will pursue discovery in these and other appropriate areas in earnest."  (*Id.*, ¶ 3.)

"The law in this circuit is clear: the party opposing a motion for summary judgment should be permitted an adequate opportunity to complete discovery prior to consideration of the motion."  *Jones v. City of Columbus, Ga.*, 120 F.3d 248, 253 (11th Cir. 1997) (citations omitted).[26]  That said, it is not a prerequisite that <u>all</u> discovery be completed before summary judgment is entertained.  *See Florida Power & Light Co. v. Allis Chalmers Corp.*, 893 F.2d 1313, 1316 (11th Cir. 1990) ("The district court is not required to await the completion of discovery before ruling on a motion for summary judgment.").  In fact, the Eleventh Circuit has counseled that "we expect that district judges will be open" to Rule 56 motions filed "at an early

---

"that the Court consider same under Rule 56(d)."  (Doc. 37.)  Because the mistake was both obvious and promptly fixed, opposing counsel could not have been misled or confused as to the import and purpose of the affidavit of plaintiff's counsel filed on July 16, 2014.  Under the circumstances, and in the absence of any conceivable prejudice to defendant, the Court will construe plaintiff's counsel's affidavit as having been filed pursuant to Rule 56(d), notwithstanding the incorrect rule citation therein.

[25]    These areas in which plaintiff contends discovery is needed include Providence Hospital's billing and collections policies, practices and procedures; the relationship between Accretive and Providence Hospital, and Accretive's role in the billing process; all circumstances relating to the nature and collections history of Church's account; Accretive's business practices and its activities as to collection of debt; and other instances in which Accretive has either been determined to be or has acknowledged that it is a debt collector covered by the FDCPA.  *Id.*

[26]    *See also Dean v. Barber*, 951 F.2d 1210, 1214 (11th Cir. 1992) ("A party opposing summary judgment should be given the opportunity to discover information relevant to the summary judgment motion."); *Snook v. Trust Co. of Georgia Bank of Savannah, N.A.,* 859 F.2d 865, 870 (11th Cir. 1988) ("summary judgment should not be granted until the party opposing the motion has had an adequate opportunity for discovery"); *Baucom v. Sisco Stevedoring, LLC*, 506 F.Supp.2d 1064, 1067 n.1 (S.D. Ala. 2007) (reciting general rule); *Sideridraulic System SpA v. Briese Schiffahrts GmbH & Co. KG*, 2011 WL 3204521, *3 (S.D. Ala. July 26, 2011) (denying motion for summary judgment as premature where movant had made no showing to justify timing of motion filed just 40 days after entry of Rule 16(b) Scheduling Order).

stage of the litigation if the moving party clearly apprises the court that a prompt decision will likely avoid significant unnecessary discovery." *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1188 (11th Cir. 2005); *see also Reflectone, Inc. v. Farrand Optical Co.*, 862 F.2d 841, 843-44 (11th Cir. 1989) (declining to adopt *per se* rule prohibiting entry of summary judgment before discovery). The text of the rule itself underscores the point by providing that, unless a different time is fixed by court order or local rule, "a party may file a motion for summary judgment **at any time** until 30 days after the close of all discovery." Rule 56(b), Fed.R.Civ.P. (emphasis added).

The burden for showing entitlement to relief under Rule 56(d) rests with Church.[27] On this record, the Court agrees with Church that the interests of fairness and equity lead inexorably to the conclusion that Accretive's Motion for Summary Judgment is premature. Without the benefit of discovery, plaintiff lacks any reasonable means of challenging, testing or controverting the Donna Bragg Affidavit and accompanying policy manual pages submitted by Accretive. Plaintiff has identified specific areas in which the record is not fairly developed. In all such areas, plaintiff lacks the ability to obtain necessary information without the formal discovery process. Plaintiff has shown that the categories of information identified (as to none of which discovery has yet occurred) are or may be essential to her opposition to the pending Rule 56 Motion. To force Church to go forward with summary judgment now would be unfair because it would deprive her of the tools and information she reasonably requires to prepare her opposition.

Of course, the Eleventh Circuit has left no doubt that "[s]ummary judgment is premature when a party is not provided a reasonable opportunity to discover information essential to his opposition." *Smith v. Florida Dep't of Corrections*, 713 F.3d 1059, 1064 (11th Cir. 2013); *see*

---

[27] *See, e.g., Virgilio v. Ryland Group, Inc.*, 680 F.3d 1329, 1338 (11th Cir. 2012) ("Because the burden on a party resisting summary judgment is not a heavy one, one must conclusively justify his entitlement to the shelter of [Rule 56(d)] by presenting specific facts explaining the inability to make a substantive response.") (citation omitted); *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 628 (7th Cir. 2014) ("The Rule places the burden on the non-movant that believes additional discovery is required to state the reasons why the party cannot adequately respond to the summary judgment motion without further discovery.") (citation and internal quotation marks omitted); *F.T.C. v. E.M.A. Nationwide, Inc.*, 767 F.3d 611 (6th Cir. 2014) (party invoking Rule 56(d) must affirmatively demonstrate "how postponement of a ruling on the motion will enable him … to rebut the movant's showing of the absence of a genuine issue of fact") (citation omitted); *Toben v. Bridgestone Retail Operations, LLC*, 751 F.3d 888, 894 (8th Cir. 2014) (similar).

*also Snook v. Trust Co. of Georgia Bank of Savannah, N.A.*, 859 F.2d 865, 870 (11th Cir. 1988) ("If the documents or other discovery sought would be relevant to the issues presented by the motion for summary judgment, the opposing party should be allowed the opportunity to utilize the discovery process to gain access to the requested materials."). Such is the case here. Therefore, pursuant to Rule 56(d), Fed.R.Civ.P., the Court **denies** defendant's alternative Motion for Summary Judgment, provided, however, that defendant may renew its Rule 56 motion after plaintiff has received an adequate opportunity to discover information essential to her opposition.

IV.    **Conclusion.**

For all of the foregoing reasons, it is **ordered** as follows:

1.    Defendant's Motion to Dismiss and, in the Alternative, for Summary Judgment (doc. 43) is **granted in part**, and **denied in part**;

2.    The Motion to Dismiss is **granted** with respect to Count Two (violation of discharge injunction), and that cause of action is **dismissed without prejudice** for lack of a private right of action for violation of the bankruptcy discharge injunction under 11 U.S.C. § 105(a) or 11 U.S.C. § 524(a)(2);

3.    The Motion to Dismiss is **denied** with respect to Count One because that cause of action adequately states a claim for violation of multiple sections of the FDCPA;

4.    The alternative Motion for Summary Judgment is **denied** pursuant to Rule 56(d), Fed.R.Civ.P., without prejudice to defendant's ability to renew such motion after plaintiff has a reasonable opportunity to conduct the necessary discovery; and

5.    The parties are **ordered** to file their Rule 26(f) Report of Parties Planning Meeting on or before **January 13, 2015**.[28]

DONE and ORDERED this 16th day of December, 2014.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE

---

[28]    In its reply, Accretive argues that, if summary judgment is denied, "permissible discovery should be limited to the issue of whether Accretive Health was acting as a debt collector under the FDCPA." (Doc. 51, at 10-11.) Insofar as defendant wishes to pursue it, such a request should be addressed in the Rule 26(f) Report and may be taken up by Magistrate Judge Bivins in issuing the Rule 16(b) Scheduling Order. In general, however, requests for piecemeal litigation or staggered discovery are both inefficient and disfavored under the federal rules.